WHEN RECORDED MAIL TO:
OPTION ONE MORTGAGE CORP.
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN: RECORDS MANAGEMENT

Doc#: 16944
Bk: 2534 Pg: 63

Loan Number: ▓▓▓▓
Servicing Number: ▓▓▓▓

[Space Above This Line For Recording Data]

# MORTGAGE

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated December 10, 2003, will be called the "Security Instrument."
(B) "Borrower."
CARLETON O MITCHELL AND DEBRA M MITCHELL

sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "Lender."
Option One Mortgage Corporation, a California Corporation
will be called "Lender." Lender is a corporation or association which exists under the laws of
CALIFORNIA            . Lender's address is
              3 Ada, Irvine, CA  92618              .
(D) "Note." The note signed by Borrower and dated December 10, 2003, will be called the "Note." The Note shows that I owe Lender
SEVENTY THOUSAND FIVE HUNDRED
                    ... AND NO/100THs     Dollars (U.S. $70,500.00   ) plus interest.
I have promised to pay this debt in monthly payments and to pay the debt in full by January 01, 2034.
(E) "Property." The property that is described below in the section titled "Description of the Property," will be called the "Property."
(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**
I mortgage, grant and convey the Property to Lender, with mortgage covenants, subject to the terms of this Security Instrument, to have and to hold all of the Property to Lender, and to its successors and assigns, forever. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. Those rights that the law gives to lenders who hold mortgages on real property include those rights known as "Mortgage Covenants." I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:
(A) Pay all the amounts that I owe Lender as stated in the Note;
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument.

**DESCRIPTION OF THE PROPERTY**
I grant and mortgage to Lender the Property described in (A) through (G) below:
(A) The Property which is located at   1564  SWAN LAKE AVE
                                                    [Street]
     SWANVILLE                        , Maine   04915-4355  . This Property is in
        [City]                                   [Zip Code]
     Waldo                              County. It has the following legal description:
MAP 11 LOT 19C

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

M▓▓▓▓▓▓▓    DMM
Page 1 of 9                                        MED10011 (03/29/00)


EXHIBIT C

Loan Number: ▓▓▓▓▓   Servicing Number: ▓▓▓▓▓   Date: 12/10/03

THE SECURITY INSTRUMENT SECURES AN OBLIGATION FOR A MANUFACTURED HOME/MOBILE HOME THAT IS PERMANENTLY AFFIXED TO THE LAND AND IS AN APPURTENANCE THERETO. THE ABOVE DESCRIBED MANUFACTURED HOME/MOBILE HOME IS CONSIDERED BY THE GRANTORS HEREIN TO BE A COMPONENT OF THE LAND AND INTENDED TO BE CONVEYED JOINTLY WITH THE LAND AS REAL PROPERTY.

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;

(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains promises and agreements that vary, to a limited extent, in different parts of the country. My promises and other agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

**1. BORROWER'S PROMISE TO PAY**

I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

**2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE**

(A) Borrower's Obligations

I will pay to Lender all amounts necessary to pay for taxes, assessments, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the Note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":

(i) The estimated yearly taxes and assessments on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";

(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);

(iii) The estimated yearly premium for hazard or property insurance covering the Property;

(iv) The estimated yearly premium for flood insurance covering the Property (if any);

(v) The estimated yearly premium for mortgage insurance (if any); and

(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will be limited to the lower amount.

*C.O.M.*
*DMM*

Page 2 of 9   MED10012 (03/29/00)

Loan Number: ▉▉▉▉   Servicing Number: ▉▉▉▉

Bk: 2534 Pg: 65
Date: 12/10/03

**(B) Lender's Obligations**
Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, or for using the Funds to pay Escrow Items, or for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. Maine law requires payment of, and Lender agrees to pay me, interest on the Funds in the manner and amount set forth in Maine law on the date of this Security Instrument.

**(C) Adjustments to the Funds**
Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater than the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

**3. APPLICATION OF BORROWER'S PAYMENTS**
Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:
First, to pay any prepayment charges due under the Note;
Next, to pay the amounts due to Lender under Paragraph 2 above;
Next, to pay interest due;
Next, to pay principal due; and
Last, to pay any late charges due under the Note.

**4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superior lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE**
I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

*C.O.M*
*DMM*

MED10013 (03/29/00)

Loan Number: ███████   Servicing Number: ███████

Doc #: 16744
Bk: 2534 Ps: 66
Date: 12/10/03

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-days period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold.

**6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION.**

**(A) Borrower's Obligations to Occupy the Property**

Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

**(B) Borrower's Obligations to Maintain and Protect the Property**

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

**(C) Borrower's Obligations to Fulfill Any Lease Obligations**

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**(D) Borrower's Loan Application**

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibility for the loan, Lender will treat this as a default under this Security Instrument.

*C O.M*
*DMM*

Loan Number: ▮▮▮▮   Servicing Number: ▮▮▮▮   Date: 12/10/03

### 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

### 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurance coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 2 above.

### 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

### 10. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

### 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
(A) Borrower's Obligations

Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

*[signature: C. O-M / Om m]*

Page 5 of 9   MED10015 (03/29/00)

Loan Number: ███████   Servicing Number: ███████

Doc#: 16944
Bk: 2534 Pg: 68
Date: 12/10/03

Bk: 2534 Pg: 68

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

### 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms of this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

### 13. LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above titled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT

This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

### 16. BORROWER'S COPY

I will be given one conformed copy of the Note and of this Security Instrument.

### 17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

*C.O.M.*
*DMM*

Loan Number: ▇▇▇▇▇▇    Servicing Number: ▇▇▇▇▇▇

Doc#: 16944
Bk: 2534 Pg: 69
Date: 12/10/03
BK: 2534 Pg: 69

18. **BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED**

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or at any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions: (A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and
(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and
(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys'
fees; and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security
Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

19. **NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER**

The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note; there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the
name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

20. **CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY**

The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property.

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

21. **LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS**

Except as provided in Paragraph 17, above, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If any installment under the Note or notes, secured hereby is not paid when due, or if Borrower should be in default under any provision of this security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.

C.O.M
DMM

MED10017 (03/29/00)

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is know as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

### 22. LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT

When lender has been paid all amounts due under Note and under this Security Instrument, Lender will discharge this security Instrument by delivering a certificate stating this Security Instrument has been satisfied. To the extent permitted by applicable law,
I will be required to pay Lender a fee for the discharge and for all costs of recording the discharge in the proper official records.

**23. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

**24. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

**25. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defence to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

**26. Modification.** The Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**27. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien discharges and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

**28. Clerical Error.** In the event that Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**29. Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents of instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effects as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**30. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

**31. Payment During Foreclosure.** I agree that Lender may accept rents from the Property, hazard insurance proceeds, condemnation awards, and any other monies produced by the Property or paid by me, even though Lender has demanded immediate payment in full and begun foreclosure and sale under Paragraph 21 above. Lender may use such monies to pay off any part of the Sums Secured without affecting Lender's fight to continue foreclosure and sale.

*C.O.M*
*DMM*

Loan Number: ▮▮▮▮    Servicing Number: ▮▮▮▮    Date: 12/10/03

**32. Riders To This Security Instrument.** If one or more riders are signed by Borrower and recorded together with this Security of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider    ☐ Condominium Rider    ☐ 1-4 Family Rider
☒ Manufactured Home Rider  ☐ Planned Unit Development Rider    ☐ Occupancy Rider
☐ Other(s) (specify)

## NOTICE TO CONSUMER:
1. Do not sign this Agreement before you read it.
2. You are entitled to copy of this Agreement.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 8 of this Security Instrument and in any rider(s) signed by me and recorded with it.

Witnesses:

_Mart Lapin_                                   _____(Seal)
                                                              -Borrower

_to hill_                                      _____(Seal)
                                                              -Borrower

_Carleton O Mitchell_  10/10/03 (Seal)         _____(Seal)
CARLETON O MITCHELL   -Borrower                               -Borrower

_Debra M Mitchell_  12/10/03 (Seal)            _____(Seal)
DEBRA M MITCHELL      -Borrower                               -Borrower

STATE OF MAINE,    Penobscot    County ss:

On this  10th  day of  December, 2003 , personally appeared the above named  Carleton O. Mitchell and Debra M. Mitchell  and acknowledged the foregoing instrument to be  their  free act and deed.

Before me,

_Mart Lapin_
Justice of the Peace/Notary Public

MART LAPIN
NOTARY PUBLIC - ME
MY COMMISSION EXPIRES 05/15/2010

(Seal)

Prepared by _____

Doc#:   16944
Bk: 2534 Pg:   72

Loan Number: ███   Servicing Number: ███   Date: 12/10/03

(To Be Recorded With the Security Instrument)

## MANUFACTURED HOUSING RIDER
## TO THE SECURITY INSTRUMENT

**LENDER.** The name and address of the Lender/Secured Party is:
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57023
IRVINE, CA 92619-7023

**BORROWER.** The name and address of the Borrower is:
CARLETON O MITCHELL and DEBRA M MITCHELL

1564 SWAN LAKE AVE
SWANVILLE, ME  04915-4355
**PROPERTY:**

1564  SWAN LAKE AVE,  SWANVILLE, ME 04915-4355

**THIS RIDER** ("Rider") amends and supplements the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Promissory Note ("Note") to Lender in the principal amount of $ 70,500.00   ("Loan").

IF THERE IS A CONFLICT BETWEEN THE PROVISIONS IN THIS RIDER AND THOSE IN THE NOTE OR THE SECURITY INSTRUMENT, THE PROVISIONS OF THIS RIDER WILL CONTROL. THE CONFLICTING PROVISIONS IN THE NOTE AND THE SECURITY INSTRUMENT WILL BE ELIMINATED OR MODIFIED AS MUCH AS IS NECESSARY TO MAKE ALL THE CONFLICTING TERMS AGREE WITH THIS RIDER.

### I. GENERAL COVENANTS

1. **ADDITIONAL DEFINITIONS.** In this Rider (1) "Manufactured Home" or "Home" means the manufactured home described in the Security Instrument and any accessions, attachments, accessories and additions to the Home, whether added now or later; (2) "Improvements" mean additional materials which are or will be incorporated into or associated with the property; (3) "Property" includes the Home and the

©Copyright 1999, Option One Mortgage Corporation - All Rights Reserved.
Page 1 of 5

*C.O.M.*
*DMM*

USM0181.wp (08-08-03)

Doc#: 16944
Bk: 2534 Pg: 73

Loan Number: ███████   Servicing Number: ███████   Date: 12/10/03

Improvements; and (4) "Loan Documents" means the Note, the Security Instrument, the Loan Agreement (if any), and any riders to these documents. Any capitalized terms not defined in this Rider shall have the meaning defined in the other Loan Documents.

2. **SECURITY AGREEMENT AND FINANCING STATEMENT.** To secure payment of all sums due or which become due under the Loan Documents, Borrower's performance of all other terms of the Loan Documents, and any extensions, modifications or renewals of any of the Loan Documents, to the extent permitted by law, Borrower grants Lender a security interest in (1) the Manufactured Home; (2) Borrower's right to possession and ownership of the Property; (3) any and all fixtures, machinery, equipment, building materials, appliances, and goods of every nature whatsoever now or hereafter located in, or on, or used, or intended to be used in connection with the Property or the Improvements, and all replacements of and accessions to those goods; and (4) proceeds and products of the Property. Lender's security interest shall remain in effect until Borrower has paid in full all amounts due under the Loan Documents. However, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest is prohibited by applicable law. Lender may, at its election, at any time after the delivery of the Security Instrument, sign one or more copies of the Security Instrument in order that such copies may be used as a financing statement under the applicable State laws. Lender's signature need not be acknowledged, and is not necessary to the effectiveness hereof as a Security Instrument, or (unless otherwise required by applicable law) a financing statement.

To the extent permitted by law, Borrower also authorizes Lender to sign and file, without Borrower's signature, such financing and continuation statements, amendments, and supplements thereto, and other documents which Lender may from time to time deem necessary to perfect, preserve and protect Lender's security interest in the Property. If any other documents are necessary to protect Lender's interest in the Property, Borrower agrees to sign these documents whenever Lender asks. Borrower also gives Lender permission to sign these documents for Borrower.

Borrower will pay any lawfully permitted filing or recording fees necessary for Lender to obtain and maintain in full force Lender's security interest, and any release, discharge or termination fees, after the Loan is paid in full.

3. **FUNDS FOR TAXES AND INSURANCE.** Lender hereby waives the requirements of Paragraph 2 of the Security Instrument. Lender, however, specifically reserves to itself and its successors and assigns the right to revoke this waiver at any time and reinstate and enforce the requirements of Paragraph 2 of the Security Instrument to the extent permitted by law.

4. **HAZARD OR PROPERTY INSURANCE.** Paragraph 5 of the Security Instrument is amended to add the following:

   Borrower will not allow any condition to exist that would, in any way, invalidate insurance on the Property. In the event of loss or damage to the Property, Lender may require additional security or assurance of payment before Lender allows any amounts paid by the insurance company (the "Insurance Proceeds") to be used to repair or replace the Property. Borrower authorizes Lender to adjust Borrower's losses, and sign Borrower's name to any check, draft or other papers necessary to obtain Insurance Proceeds. Borrower authorizes any insurer to pay Lender directly. If Insurance Proceeds paid to Lender do not pay off all amounts Borrower owes Lender under the Loan Documents, Borrower is responsible for the balance.

©Copyright 1999, Option One Mortgage Corporation - All Rights Reserved.
Page 2 of 5

C. O. M
DMM

USM0181.wp (08-08-03)

Doc#: 16944
Bk: 2534 Pg: 74

Loan Number: ▮▮▮▮    Servicing Number: ▮▮▮▮    Date: 12/10/03

5. **OCCUPANCY, PRESERVATION, MAINTENANCE AND PROTECTION OF THE PROPERTY; BORROWER'S LOAN APPLICATION, LEASEHOLDS.** Paragraph 6 of the Security Instrument is amended to add the following.

Until all amounts owed under the Loan Documents are paid in full, Borrower promises that the Manufactured Home will be permanently affixed to and be part of the Property. Borrower will do whatever is necessary to keep Lender's claim to a first priority security interest in the Property valid and will not grant or permit any lien on the Property other than as specifically approved by Lender. Borrower will sign any additional documents or provide Lender with any additional information Lender may require in connection with Lender's claim to the Property.

Borrower will notify Lender promptly of any loss, or damage to, or confiscation of, the Property, including theft of the Home. When Lender requests, Borrower promptly will provide Lender with proof that (a) Borrower has the insurance required under the Loan Documents; (b) all taxes, both realty and personal assessed against the Property have been paid; (c) Lender's lien is the only lien against the Property; and (d) the Property is in good condition and repair.

6. **MORTGAGE INSURANCE.** Lender hereby waives the terms and conditions of Paragraph 8 of the Security Instrument.

7. **SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CO-SIGNERS.** Paragraph 12 of the Security Instrument is amended to add a new second paragraph and a new third paragraph as follows:

Each Borrower who signs this Security Instrument is independently responsible to pay any amounts which are due or become due under it and to keep the other promises made in it. Each Borrower has this responsibility even if: (1) someone else has also signed this Security Instrument; (2) Lender releases or does not try to collect amounts due from another who is also responsible to make payment under the Loan Documents; (3) Lender releases any security or does not try to take back any Property; (4) Lender gives up any other rights Lender may have; or (5) Lender extends new credit, renews the Note, or modifies any other Loan Document in any other way.

Unless the law or the Loan Documents provide otherwise, Lender is not required to: (1) demand payment of amounts due; (2) give notice that amounts due have not been paid, or have not been paid in the appropriate amount, time, or manner; or (3) give notice that Lender intends to make, or is making, the Note immediately due.

8. **ACCELERATION; REMEDIES.** Paragraph 21 of the Security Instrument is amended to read as follows:

"21. "Acceleration; Remedies. If Borrower is in default under the Loan Documents or if Borrower is in default under any other instrument secured by the Property, Lender has all of the remedies provided by law and the Loan Documents. Before using a remedy, Lender will send Borrower any notice required by law, and wait for any cure period that the law may require for that remedy. Lender's remedies include the following:

a) **Entire Balance Due Immediately.** Lender may require Borrower to immediately pay Lender all amounts due under the Loan Documents.
b) **Attorney's Fees and Other Costs.** Borrower will pay Lender's costs for collecting amounts Borrower owes Lender or defending Lender's interest in the Property, including, without limitation, court costs, reasonable attorneys' fees (if Lender refers this Loan for collection to an attorney who is not Lender's salaried employee) and costs of title examination.

©Copyright 1999, Option One Mortgage Corporation - All Rights Reserved.
Page 3 of 5                                    USM0181.wp (08-08-03)

*[initials]*

Doc#: 16944
Bk: 2534 Pg: 75

Loan Number: ▮▮▮▮    Servicing Number: ▮▮▮▮    Date: 12/10/03

c) **Appointment of Receiver.** Lender, in any action to foreclose the Security Instrument, shall be entitled to appointment of a receiver without any special notice to Borrower. Lender may have a receiver appointed as a matter of right no matter what balance Borrower owes to Lender, and regardless of the adequacy of the Property.

d) **Power of Sale.** Lender may invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law.

e) **Suit for Deficiency.** Except when prohibited by law, Lender may sue Borrower for additional amounts if the sale proceeds do not pay all Borrower owes Lender.

f) **Cumulative Remedies.** By choosing any one or more of these remedies, Lender does not waive Lender's right to later use one or more other remedies, except as limited by applicable law. To the extent permitted by law, exercise of any one or more remedies against one or more Borrowers will not prevent Lender from pursuing another remedy or remedies against any one or more Borrowers in the future. If Lender does not act on any default, Lender does not give up Lender's right to later treat that type of event as a default.

_/s/ Carleton O. Mitchell_  12/10/03
Borrower CARLETON O MITCHELL    Date

_/s/ Debra M. Mitchell_  12/10/03
Borrower DEBRA M MITCHELL    Date

Borrower _____    Date _____    Borrower _____    Date _____

Borrower _____    Date _____    Borrower _____    Date _____

©Copyright 1999, Option One Mortgage Corporation - All Rights Reserved.
Page 4 of 5

USM0181.wp (08-08-03)

Doc#: 16944
Bk: 2534 Pg: 76

Loan Number: ▮▮▮▮    Servicing Number: ▮▮▮▮    Date: 12/10/2003

_____[Space Below This Line For Acknowledgment]_____

STATE OF __Maine__

COUNTY OF __Penobscot__ }SS

On __December 10, 2003__ before me, the undersigned, a Notary Public

in and for said State, personally appeared __Carleton O. Mitchell and Debra M. Mitchell__ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.   Signature _____
(Reserved for official seal)

Name (typed or printed)  **MART LAPIN**
My commission expires: **NOTARY PUBLIC - ME**
**MY COMMISSION EXPIRES 05/15/2010**

©Copyright 1999, Option One Mortgage Corporation - All Rights Reserved.
Page 5 of 5

USM0181.wp (08-08-03)

Doc#: 16944
Bk: 2534 Pg: 77

**WHEN RECORDED RETURN TO:**
OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57023
IRVINE, CA 92619-7023

ATTN: MANUFACTURED HOUSING

# AFFIXATION AFFIDAVIT REGARDING MANUFACTURED HOME

Description of Manufactured Home ("Manufactured Home")
Manufacturer's Name: REDMUND
Manufacturer's Serial No.: ▓▓▓▓▓▓▓▓▓▓
Model Name:
Model No.:
Year: 2003
Length: 46                               Width: 24

Address:
Street/Route: 1564 SWAN LAKE AVE
City: SWANVILLE            County/Parish: Waldo
State: ME                   Zip Code: 04915-4355

1. The Manufactured Home described above is located at the above-referenced address and is permanently affixed to a foundation and will assume the characteristics of site-built housing.

2. The wheels, axles, towbar or hitch were removed when the Manufactured Home was placed on the permanent site.

3. All foundations, both perimeter and piers for the Manufactured Home have footings that are located below the frost line.

4. If piers are used for the Manufactured Home, they will have been placed where the home manufacturer recommends.

5. If state law so requires, anchors for the Manufactured Home have been provided.

6. The Manufactured Home is permanently connected to a septic tank or sewage system and other utilities such as electricity, water and natural gas.

*C.O.M*
*DMM*

Page 1 of 3                                                      USM0191.wp (12-06-02)

Doc#: 16944
Bk: 2534 Pg: 78

Loan Number: ▮▮▮▮    Servicing Number: ▮▮▮▮    Date: 12/10/03

7. No other lien or financing affects the Manufactured Home, other than those disclosed in writing to Lender.

8. The Manufactured Home had been built in compliance with Federal Manufactured Home Construction and Safety Standards that were established June 15, 1976, commonly referred to as HUD Code.

9. The foundation system of the Manufactured Home has been designed by an engineer to meet the soil conditions of the site.

10. Borrower(s) acknowledge that the Manufactured Home will become immovable property and part of the real property secured by the security instrument.

11. This Affidavit is executed by Borrower(s) pursuant to applicable state law.

12. The Manufactured Home will be assessed and taxed as an improvement to the real property. I/We understand that if Lender does not escrow for these taxes that I/we will be responsible for the payment of such taxes.

13. If the land is being purchased, such purchase and the Manufactured Home represent a single real estate transaction, under applicable state law.

14. All permits required by governmental authorities have been obtained.

Borrower(s) certifies that Borrower(s) is/are in receipt of manufacturers recommended maintenance program regarding the carpets and manufactured warranties covering the heating/cooling systems, hot water heater, range, etc., and the formaldehyde health notice.

IN WITNESS WHEREOF, Borrower(s) has/have executed this Affidavit pursuant to applicable state law on this _____ day of _____,

_[signature]_ 12/10/03
Borrower CARLETON O MITCHELL

_[signature]_ 12/10/03
Borrower DEBRA M MITCHELL

_____
Witness

_____
Witness

_____
Borrower

_____
Borrower

_____
Borrower

Page 2 of 3

USM0191.wp (12-06-02)

Doc#: 16944
Bk: 2534 Ps: 79

Loan Number: [redacted]     Servicing Number: [redacted]     Date: 12/10/03

_____[Space Below This Line For Acknowledgment]_____

STATE OF __Maine__

COUNTY OF __Penobscot__ }ss

On __December 10, 2003__ before me, the undersigned, a Notary Public in and for said State, personally appeared __Carleton O. Mitchell and Debra M. Mitchell__ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.    Signature __Mart Lapin__
(Reserved for official seal)

Name (typed or printed)    MART LAPIN
                           NOTARY PUBLIC - ME
                           MY COMMISSION EXPIRES 05/15/2010
My commission expires: _____

**ATTENTION COUNTY CLERK.** This instrument covers goods that are or are to become fixtures on the Manufactured Home described herein and is to be filed for record in the records where Security Instruments on real estate are recorded. The mailing address of the Borrower (Debtor) and Lender (Secured Party) are set forth in the Security Instrument.

Page 3 of 3

USM0191.wp (12-06-02)

Doc#:    16944
Bk: 2534 Pg:    80

## Exhibit A

A certain lot or parcel of land, together with any buildings thereon, situated in Swanville, County of Waldo, State of Maine, and more particularly bounded and described as follows, to wit:

Point of beginning at an iron stake located in the west boundary of Route #141, which stake also marks the southeastern corner of land now or formerly of Walter Wood, thence in a westerly direction along this southern surveyed boundary line a distance of three hundred (300) feet to an iron post; thence in a southerly direction a distance of one hundred fifty (150) feet to an iron post; thence in an easterly direction a distance of three hundred (300) feet to an iron post; thence in a northerly direction following the west boundary of Route #141 a distance of one hundred fifty (150) feet to the point of beginning. All footage between boundary markers is more or less.

Any and all other rights, easements, privileges and appurtenances belonging to the granted estate are hereby conveyed.

Being the same premises as described in the deed from Jeanna L. Bonin to Carleton O. Mitchell and Debra M. Mitchell dated August 11, 2000 and recorded in Waldo County Registry of Deeds, Book 2025 Page 102.

*C.O.M.*
*DMM*

Received
Recorded Register of Deeds
Dec 16, 2003 10:16:03A
Waldo County
Deloris Page